

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ELLEN R. DUNSTON,  )
    Plaintiff,  )
      )
v.  )    Civil Action No. 1:09cv1369
      )
CECIL HUANG, M.D., *et al.*,  )
    Defendants.  )

## MEMORANDUM OPINION

This diversity medical malpractice case presents a question concerning the application of Virginia's six-month statute of limitations tolling provision for nonsuited actions. *See* Va. Code § 8.01-229(E)(3). More specifically, at issue is whether now time-barred claims of failure to perform an alternative procedure and lack of informed consent are saved by the six-month tolling provision where those claims were not pled in the original medical malpractice action.

### I.[1]

On March 19, 2008, plaintiff filed a complaint in the Circuit Court for Loudon County alleging a medical malpractice claim against (i) Loudon Anesthesia Associates, L.L.C., d/b/a Loudon Interventional Pain Center ("LIPC"), and (ii) Dr. Cecil Huang, an LIPC employee. Specifically, plaintiff alleged that on June 1, 2006, she sought treatment from defendants for pain associated with shingles. In response, Dr. Huang gave plaintiff an epidural steroid injection. Immediately after receiving the injection, plaintiff suffered (i) chest and arm pain, (ii) a rash on her back, and (iii) numbness in her right leg, and accordingly was transported to Loudon

---

[1] The facts stated herein are derived from plaintiff's federal complaint and nonsuited state court complaints, and are assumed to be true for the purpose of considering defendants' motion to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1959 (2009).

-1-

Hospital. Plaintiff alleges that as a proximate result of the injection, she (i) is paralyzed from the chest down and confined to a wheelchair, (ii) has been hospitalized on numerous occasions, and (iii) requires the aid of a nurse when not hospitalized. In paragraph 12 of the complaint, plaintiff claims that defendants negligently failed to meet the standard of care owed to her by: (i) "fail[ing] to appropriately and adequately [sic] monitor Ms. Dunston's condition while a patient of defendants on . . . June 1, 2006"; and (ii) "fail[ing] to provide Ms. Dunston the appropriate treatment and care for her condition." As compensation for the injuries she suffered, plaintiff seeks $10 million in damages.

Thereafter, plaintiff filed an amended complaint. This pleading is identical to the original complaint with the exception of paragraph 12, which was replaced with the following allegations relating to negligent breach of the applicable standard of care:

> (i) that defendants "failed to appropriately and adequately [sic] monitor Ms. Dunston's condition while a patient of the defendants on . . . June 1, 2006";
>
> (ii) that defendants "failed to take the appropriate precautions before administering the epidural"; and
>
> (iii) that defendants "failed to appropriately and properly [sic] place the epidural."

On June 30, 2009, the Circuit Court for Loudon County granted plaintiff's motion to nonsuit the amended complaint as to both defendants pursuant to Virginia Code § 8.01-380.

On December 14, 2009—within six months of the nonsuit—plaintiff filed a diversity jurisdiction complaint in federal court naming again LIPC and Dr. Huang as defendants. As she did in the nonsuited state amended complaint, plaintiff alleged in her federal complaint that she sought treatment from defendants on June 1, 2006, for pain associated with shingles and, after Dr. Huang administered an epidural injection to her, that she suffered pain and lower-body

paralysis. In addition to the allegations contained in the nonsuited state amended complaint regarding negligent breach of the standard of care in the administration of the epidural injection, plaintiff added the following allegations and legal claims in her federal complaint:

> 20. Before the procedure, Dr. Huang did not explain to Ms. Dunston the additional risks associated with an epidural steroid injection over an injection without particulate steroids.
>
> 21. Dr. Huang did not sign the consent form for the procedure he performed on Ms. Dunston.
>
> 31. The defendants breached their duties to Ms. Dunston . . . in at least the following respects:
>     a. Dr. Huang failed to perform the proper and appropriate procedure for Ms. Dunston's condition.
>     b. Dr. Huang failed to properly [sic] obtain informed consent for the procedure he did perform.
> . . .

Thereafter, defendants, citing the Virginia two-year statute of limitations for personal injury claims,[2] filed a motion to dismiss the federal complaint with respect to these newly-pled claims of failure to perform an alternative procedure and lack of informed consent. The parties, by counsel, fully briefed and argued the issues at a March 5, 2010 hearing. Accordingly, defendants' motion is ripe for disposition.

## II.

In Virginia, it was long the law that plaintiffs had a right to take a non-prejudicial nonsuit

---

[2] Virginia Code § 8.01-243 requires that "every action for personal injuries, whatever the theory of recovery, . . . be brought within two years after the cause of action accrues." Here, plaintiff was injured, and the action accrued, on June 1, 2006, *see id.* § 8.01-230, and thus the statute of limitations period expired on June 1, 2008. *See Janvier v. Arminio*, 634 S.E.2d 754, 756 (Va. 2006) (discussing statute of limitations in medical malpractice case). Although the claims pled in the nonsuited state amended complaint were timely filed, the claims relating to failure to perform an alternative procedure and lack of informed consent were not raised until plaintiff filed her federal complaint on December 14, 2009.

of their complaints or motions for judgment at any time before (i) a motion to strike the evidence had been sustained, (ii) the jury had retired to deliberate, or (iii) the case had been submitted to the court for decision. *See* Va. Code § 8.01-380(A) (2007). Responding to the sharp debate over this unfettered right to nonsuit,[3] the General Assembly of Virginia added limitations and conditions to the Virginia nonsuit statute, namely (i) that the action must be recommenced within six months, (ii) that the new action must proceed in the same court or federal court; (iii) that a plaintiff may take a nonsuit only once as a matter of right as to a given cause of action, although additional nonsuits may be granted where appropriate, (iv) that a court may assess costs and attorney's fees against the plaintiff where additional nonsuits are granted or where insufficient

---

[3] The Virginia nonsuit statute has long been controversial. As one student note in the *Virginia Law Review* concluded in 1951 with respect to nonsuit statutes generally,

> Often a plaintiff can tell when a trial is not progressing to his advantage. This does not mean that he should be able to withdraw without prejudice to his right of future action. Certainly he is not the only party with an interest in litigation. The rights of the defendant should deserve some consideration as well.

Note, *The Right of a Plaintiff to Take a Voluntary Nonsuit or to Dismiss His Action Without Prejudice*, 37 Va. L. Rev. 969, 986 (1951). In the 1970s, the Boyd-Graves Conference—a civil law reform group composed equally of plaintiff and defense attorneys from the Virginia bar—debated the merits of Virginia's nonsuit statute and called for reform of the statute. The General Assembly responded, as noted above. More recently, the Supreme Court of Virginia aptly characterized the nonsuit statute and the competing interests underlying a former formulation, as follows:

> The right to take a nonsuit on the eve of trial, notwithstanding a defendant's loss of time and expense incurred in preparation, and notwithstanding any disruption which may result to the court's docket, is a powerful tactical weapon in the hands of a plaintiff. The General Assembly has provided, in Code § 8.01-380, several conditions to give balance to the exercise of that right. Nonsuit remains, however, distinctly a weapon in the arsenal of a plaintiff.

*Trout v. Commonwealth Transp. Comm'r of Va.*, 400 S.E.2d 172, 174 (Va. 1991).

notice of a nonsuit is given in advance of trial, and (v) that a nonsuit may not be taken without the opposing party's consent where a counterclaim, cross-claim, or third-party claim has been filed. *See id.* §§ 8.01-229(E)(3), -380.

This case implicates the requirement that in the event a plaintiff seeks to refile a nonsuited action, she must recommence the nonsuited action within six months of the nonsuit order. *Id.* § 8.01-229(E)(3). Specifically, two statutory sections are pertinent here. First, the nonsuit statute found at Virginia Code § 8.01-380 states that "[a] party shall not be allowed to suffer a nonsuit as to any *cause of action or claim*, or any other party to the proceeding," provided that certain conditions are met. *Id.* § 8.01-380 (emphasis added). Second, in a separate section the nonsuit statute of limitations tolling provision provides that

> [i]f a plaintiff suffers a voluntary nonsuit as prescribed in § 8.01-380, the statute of limitations with respect to *such action* shall be tolled by the commencement of the nonsuited action, and the plaintiff may recommence his action within six months from the date of the order entered by the court.

*Id.* § 8.01-229(E)(3) (emphasis added).[4] Accordingly, the precise question presented here is whether the two otherwise time-barred claims pled in the federal complaint, yet omitted from the nonsuited state state amended complaint—namely failure to perform an alternative procedure and lack of informed consent—are part of the "action" that was nonsuited and hence saved by the nonsuit statute of limitations tolling provision.[5]

---

[4] The statute also states that the action may be recommenced within the original limitations period if it has not already expired, and within one year of the appointment of a personal representative where a defendant has died following the nonsuit. *See* Va. Code § 8.01-229(E)(3); *Simon v. Forer*, 578 S.E.2d 792, 795 (Va. 2003) (describing three time periods in which a nonsuited claim may be recommenced).

[5] It is worth noting that plaintiff in her opposition brief argues that she has pled sufficient facts to meet the notice pleading standard of Rule 8(a), Fed. R. Civ. P., and that defendants are

The answer to this question requires ascertaining what is meant under Virginia law by the terms "action" and "cause of action." An understanding of the proper scope and meaning of these terms is central to determining whether the two federally-added claims are (i) part of the nonsuited cause of action and hence saved by the six month tolling provision, or (ii) distinct from, and not part of, the nonsuited cause of action and hence time-barred by the applicable two-year statute of limitations. Virginia Code § 8.01-2(1) defines "action" to "include all civil proceedings whether upon claims at law, in equity, or statutory in nature." Additionally, although not defined by statute, it is well-established that a "cause of action" as used in the Virginia Code—including § 8.01-380—means "a set of operative facts which, under the substantive law, may give rise to a right of action." *Roller v. Basic Constr. Co.*, 384 S.E.2d 323, 326 (Va. 1989).[6] Although the terms "action" and "cause of action" are ordinarily distinct,[7] it is clear that the word "action" as used in the nonsuit statute of limitations tolling provision refers to the nonsuited cause or causes of action; the tolling provision does not apply to causes of action omitted from the nonsuited complaint. This conclusion is compelled by the statutory text. The nonsuit statute refers to the nonsuited matter as a "cause of action or claim," and the nonsuit

---

improperly attempting to impose a heightened pleading standard in arguing for dismissal. Yet, defendants' motion relies solely on a statute of limitations argument, not an argument that plaintiff's complaint fails to state a claim under *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Thus, it is not necessary to reach or address plaintiff's argument.

[6] A right of action, in turn, is "a remedial right to presently enforce a cause of action." *Stone v. Ethan Allen, Inc.*, 350 S.E.2d 629, 631 (Va. 1986). This definition appears to make "right of action" synonymous with "claim."

[7] *See Trout v. Commonwealth Transp. Comm'r of Va.*, 400 S.E.2d 172, 174 (Va. 1991) ("An 'action' and a 'cause of action' are quite different."). The term "action" refers to the proceeding that is pending, which may include one or more "causes of action."

statute of limitations tolling provision applies only to "such action," referring obviously to the nonsuited cause of action. Added support for this conclusion is found in the use of the word "recommence" in the statute of limitations tolling provision, which plainly indicates that the benefit of the tolling provision is limited to the cause of action or claims previously nonsuited.[8] It follows that to come within the nonsuit statute of limitations tolling provision, plaintiff's otherwise untimely claims of failure to perform an alternative procedure and lack of informed consent must form part of the same cause of action pled in the nonsuited state amended complaint.

Whether any newly added claims are part of an originally nonsuited cause of action would have been—up to 2006—a somewhat debatable issue. On the one hand, it might formerly have been argued, as defendants do here citing *Davis v. Marshall Homes*, that "the test to determine whether claims are part of a single cause of action is whether the *same evidence* is necessary to prove each claim."[9] On the other hand, it might be argued, as plaintiff does here, that the proper test for determining whether claims are part of a single cause of action is whether they arise out of the same transaction or occurrence.

Whatever may have been the status of this debate prior to 2006, the Supreme Court of

---

[8] As the Fourth Circuit has explained, "a party may nonsuit either a cause of action, a claim, or a party, and the nonsuit . . . does not operate as a bar to a subsequent suit between the same parties on the same cause of action." *Winchester Homes, Inc. v. Osmose Wood Preserving, Inc.*, 37 F.3d 1053, 1058 (4th Cir. 1994) (ellipses in original) (citation and quotation marks omitted). The Supreme Court of Virginia has made clear that claims dismissed or fully resolved with prejudice prior to the nonsuit are not part of the nonsuited action. *See Dalloul v. Agbey*, 499 S.E.2d 279, 282 (Va. 1998).

[9] 576 S.E.2d 504, 510 (Va. 2003) (citation and quotation marks omitted) (emphasis added); *see also Odeneal v. Thompson*, 63 Va. Cir. 71, 73 (2003).

Virginia ended this debate in the claim preclusion and *res judicata* context by promulgating in 2006 Rule 1:6, which provides that

> [a] party whose claim for relief arising from identified conduct, a *transaction*, or an *occurrence*, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and *regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended*, or the particular remedies sought.

Rule 1:6(a), Va. S. Ct. (emphasis added). Accordingly, it is clear that "[b]y promulgating Rule 1:6, the Supreme Court of Virginia has discarded the same-evidence and same-remedy requirements [in the claim preclusion context], adopting instead a same 'conduct, transaction, or occurrence' test." *See Martin-Bangura v. Commonwealth Dep't of Mental Health*, 640 F. Supp. 2d 729, 738 (E.D. Va. 2009) (finding claim preclusion under transactional analysis). And by doing so, the Supreme Court of Virginia has swept away *Marshall Homes, Odeneal*, and other like cases in favor of the same conduct or transaction standard embodied in Rule 1:6.[10]

Notably, the Supreme Court of Virginia's 2006 rejection of the same evidence test in the claim preclusion context was foreshadowed by the General Assembly's rejection of that test in the context of amending pleadings and the relation back of amendments to original claims. Specifically, until 1999 the Supreme Court of Virginia had emphasized that "a fair test in determining whether a new cause of action is alleged in an amendment . . . [is] to inquire if a

---

[10] The parties spill much ink over the Fourth Circuit's decision in *Hatfill v. N.Y. Times Co.*, 416 F.3d 320 (4th Cir. 2005). Yet, that decision is not helpful here as it predates Rule 1:6 and does not squarely address or clearly disclose whether the analysis there used the same evidence test or the same transaction or occurrence test. Thus, *Hatfill*'s citation to the *Odeneal* decision carries no weight.

recovery had upon the original complaint would be a bar to any recovery under the amended complaint, or if the same evidence would support both." *Vines v. Branch*, 418 S.E.2d 890, 893 (Va. 1992) (citing *Irvine v. Barrett*, 89 S.E. 904, 905 (1916)). In 1999, the General Assembly enacted Virginia Code § 8.01-6.1, which states that an amendment to a pleading relates back to the original pleading where "the claim or defense asserted in the amended pleading arose out of the conduct, transaction occurrence set forth in the original pleading." As Justice Kinser noted in her *Marshall Homes* dissent, the enactment of § 8.01-6.1 and various other Virginia statutes regarding joinder and pleading[11]—all of which use the transaction and occurrence language—indicates that

> [t]he present trend is to see [a] claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights.

576 S.E.2d at 514-15 (Kinser, J., dissenting) (quoting the Restatement (Second) of Judgments § 24(1) cmt. a. (second alteration in original)).

Although Rule 1:6 focuses on claim preclusion and *res judicata*, and § 8.01-6.1 concerns amendments to pleadings and relation back, there can be no doubt that the same transaction or occurrence test prescribed in these provisions is also applicable to the operation of the nonsuit tolling provision. To begin with, it is significant that published Virginia lower court

---

[11] *See, e.g.*, Va. Code § 8.01-272 ("A party may join a claim in tort with one in contract provided that all claims so joined arise out of the same transaction or occurrence."); *id.* § 8.01-281 ("A party asserting either a claim, counterclaim, cross-claim, or third-party claim or a defense may plead alternative facts and theories of recovery against alternative parties, provided that such claims, defenses, or demands for relief so joined arise out of the same transaction or occurrence.").

decisions—with the exception of the no longer authoritative *Odeneal* decision—have uniformly applied the same transaction or occurrence test in cases concerning the nonsuit tolling provision, often noting that "Virginia follows the broad transactional rule set forth in the Restatement of Judgments 2d, § 24 [summarizing *res judicata* principles], for purposes of defining 'cause of action.'"[12] Furthermore, it would be odd, if not nonsensical, to apply the same evidence test to the operation of the nonsuit tolling provision, given that this test has been discarded and superseded in other contexts. Indeed, the only contexts in which courts had previously applied the same evidence test to define a cause of action—*res judicata* and relation back—now use the same transaction or occurrence test as a matter of Supreme Court Rule and statute. In short, the abandonment of the same evidence test in these other contexts weighs strongly against its application here. Thus, although no Supreme Court of Virginia decision directly addresses the correct test to use to define a cause of action under the nonsuit provisions, Rule 1:6, Virginia Code § 8.01-6.1, and the greater weight of authority plainly demonstrate that the same evidence test has been rejected as a matter of Virginia public policy, if not law, and that it is the same transaction or occurrence test that measures the boundaries of a single cause of action as used in the nonsuit statute context.

On the merits, although plaintiff's additional claims—namely the failure to perform an alternative procedure and lack of informed consent—were filed after the original limitations

---

[12] *McLaughlin v. Town of Front Royal*, 34 Va. Cir. 352, 356-57 (1994); *see also Wines v. Fuller*, 45 Va. Cir. 299 (1998) ("While new rights of action may be asserted in the second Motion for Judgment, they all arise from the same transactional facts or 'cause of action' as set forth in the earlier nonsuited action; therefore, they may be properly asserted in the second action under the saving provisions . . . ."); *Front Royal & Warren County Ind. Park Corp. v. Town of Front Royal*, 29 Va. Cir. 226, 231 (1992).

period expired, application of the transaction or occurrence test compels the conclusion that these claims are nonetheless saved by the nonsuit statute of limitations tolling provision. This conclusion follows from the fact that all of the alleged medical malpractice claims—that is, both the nonsuited claims and the additional claims raised for the first time on the recommencement of the litigation—occurred during plaintiff's single visit to defendants' facility on June 1, 2006, at which time Dr. Huang conducted an examination that led to the administration of the epidural injection on the same date. The parties do not contest this or the fact that the same general factual allegations relating to plaintiff's June 1, 2006 visit to defendants' facility and receipt of an epidural injection were pled in the nonsuited state amended complaint and formed the backdrop of the nonsuited action. As such, all of plaintiff's current claims relate to a common transaction or occurrence, and therefore constitute a single cause of action. From this, it follows that because plaintiff's additional claims are included within the nonsuited cause of action, as defined by the nonsuit statute, they are also properly considered as part of the nonsuited "action" that may be recommenced within six months of the nonsuit, as understood by the nonsuit statute of limitations tolling provision. Although the Supreme Court of Virginia has held that the evidence required to prove an informed consent claim is distinct from the evidence required to prove a medical malpractice claim,[13] this distinction is not determinative given that the same evidence test no longer applies to define a cause of action.

---

[13] *See Wright v. Kaye*, 593 S.E.2d 307, 317 (Va. 2004) ("[E]vidence of information conveyed to [the plaintiff] concerning the risks of surgery in obtaining her consent is neither relevant nor material to the issue of the standard of care."). Notably, the issue raised in *Wright* did not implicate the same evidence test; rather, the decision simply addressed the relevancy and admissibility of certain evidence at trial.

## III.

In sum, plaintiff's failure to perform an alternative procedure and lack of informed consent claims were raised for the first time in her December 14, 2009 complaint, well after the expiration of the applicable two-year statute of limitations, but less than six months after the nonsuit. Because these claims and plaintiff's previously nonsuited medical malpractice claims arise out of the same transaction or occurrence, both plaintiff's additional claims and nonsuited claims constitute a single "cause of action" under the Virginia nonsuit statute, and as such come within the "action" saved by the nonsuit statute of limitations tolling provision.

An appropriate Order shall issue.

Alexandria, Virginia
March 10, 2010

/s/

T. S. Ellis, III
United States District Judge